HUGHES *v.* GARDNER.

Opinion delivered May 31, 1920.

1.  APPEAL AND ERROR—FORMER APPEAL—LAW OF CASE.—On a second appeal where the issues are the same as on the first appeal, and there has been no substantial change in the facts, what was declared as the law on the former appeal must control as the law of the case.

2.  BILLS AND NOTES—GENUINENESS OF NOTE—BURDEN OF PROOF.—Under Kirby's Digest, § 3108, authorizing a writing purporting to have been executed by a party and referred to and filed with a pleading, to be read as genuine against such party unless he denies its genuineness by affidavit before trial, a note sued on and filed with the complaint, in the absence of such affidavit, may be introduced without formal proof of execution; the burden being on the defendant to prove that it is not genuine.

3.  BILLS AND NOTES — GENUINENESS OF SIGNATURE — QUESTION FOR JURY.—Where the statutory presumption of genuineness of defendant's signature to the note sued on is aided by the introduction of a mortgage executed by defendant for the purpose of comparison of signatures, the genuineness of defendant's signature is for the jury, though defendant and two other witnesses testified the signature to the note was not defendant's.

Appeal from Benton Circuit Court; *W. A. Dickson,* Judge; affirmed.

*W. N. Ivie*, for appellant.

1. This is the second appeal in this case. 136 Ark. 332; 206 S. W. 678. The law was settled on the first appeal and the pleadings and issues are the same. The evidence here does not support the verdict. 46 Ark. 141; 2 *Id.* 360; 5 *Id.* 407; 6 *Id.* 86; 26 *Id.* 309; 70 *Id.* 385; 34 *Id.* 632; 16 Cyc. 1073; 118 Ark. 349. The mortgage introduced was clearly inadmissible in evidence. 32 Ark. 337, 16 Cyc. 1087. There is no evidence, not a scintilla, that appellant's deceased husband was acting or authorized to act as her agent in borrowing the money or that she had any knowledge or consented to such agency. 44 Ark. 213; 85 *Id.* 252; 92 *Id.* 315; 93 *Id.* 600.

The facts of this case are different from those on the first appeal. 125 Ark. 408. It was not the wife's intention to charge her separate estate. 48 Ark. 220; 66 *Id.* 113; 81 *Id.* 113; 106 *Id.* 418. The burden was on plaintiff. 103 *Id.* 246.

2. The testimony of appellee as to what appellant told him was hearsay and inadmissible. 86 Ark. 448; 76 *Id.* 435.

3. The verdict here is the result of a palpable mistake or of prejudice. 33 Ark. 751. The court here misconceived the court's opinion in the first appeal and committed prejudicial errors in the admission of testimony and its instructions to the jury.

*Rice & Rice*, for appellee.

No proper exceptions or objections were saved to the testimony adduced. There are no errors in the instructions. 70 Ark. 9; 136 *Id.* 338.

WOOD, J. This action was brought by the appellee against the appellant. The action was grounded on a promissory note dated June 23, 1913, purporting to have been executed by E. R. Hughes and appellant, Pearl Hughes, to the appellee for the sum of $500.

In defense of the action appellant set up *non est factum* and coverture.

This is the second appeal in this case. *Gardner* v. *Hughes,* 136 Ark. 332.

The issues here are the same as they were on the former appeal. Therefore, unless there has been some substantial change in the facts, what was declared as the law on the former appeal must control now under the familiar doctrine of the law of the case. *Hartford Fire Ins. Co.* v. *Enoch,* 79 Ark. 475; *Morgan Engineering Co.* v. *Cache River Drainage Dist.,* 122 Ark. 491; *Carter* v. *Younger,* 123 Ark. 266; *U. S. Annuity & Life Ins. Co.* v. *Peak,* 129 Ark. 50.

On the former appeal the court directed a verdict in favor of Pearl Hughes. On the issue of *non est factum,* under the facts developed in the former appeal, we said: "If the undisputed evidence showed that appellee did not sign the note, it was proper for the court to sustain her pleading of *non est factum* by directed verdict. Under the state of pleadings the note itself is introduced, and her signature is *prima facie* genuine. Her subsequent denial thereof raised a question of disputed facts, which could only be determined by the jury."

Mrs. Hughes testified on the former trial as she did at the last trial that she did not sign the note. On the former appeal we held that her testimony did not overcome the *prima facie* genuineness of the note under the state of the pleadings and that it was still a question for the jury as to whether the note was genuine.

On this issue, if there were no other testimony in the present record than that of Mrs. Hughes, this court under the rule of the law of the case would be bound by its former announcement, even though such announcemen were erroneous.

On the last trial Mrs. Gould, the mother of Mrs. Hughes, testified that she was familiar with the latter's handwriting and that the signature on the note in controversy wasn't that of Mrs. Hughes. E. G. Sharp, cashier of the Farmers State Bank in Rogers, testified that he had in his possession checks signed by Mrs. Hughes

and knew her signature and that he did not believe that the signature on the note was that of Mrs. Hughes.

Section 3108 of Kirby's Digest provides: ''Where the writing purported to have been executed by one of the parties is referred to in, and filed with, a pleading, it may be read as genuine against such party unless he denies its genuineness by affidavit before the trial is begun.''

This is a rule for the production of evidence which relieves the plaintiff, who sues on a writing purporting to have been executed by the defendant, of the burden of proving the genuineness of the writing before its introduction as evidence where the defendant by affidavit has not denied the genuineness of the writing before the trial is begun. But in the absence of this statute the plaintiff would have the burden of showing the genuineness of the writing before he could introduce the same in evidence. The purpose of the statute, however, was only to permit the reading or introduction of the writing without formal proof of its execution and to make it *prima facie* genuine. Where the defendant has not complied with this statute the plaintiff may introduce and read the writing on which his action is founded, and under the statute the presumption is that it is genuine. The burden is then cast upon the defendant, if he would defeat the action, to prove that the writing is not genuine.

In other words, a failure upon the part of the defendant to comply with the statute raises the inference or presumption of law that the writing on which he is sued and purporting to be signed by him is genuine, and, having failed to file the affidavit provided by the statute, the burden is cast on him to show that it is not genuine.

The rule applicable to such presumptions is announced in 16 Cyc. 1073, as follows:

''A presumption of law is a rule of law announcing a definite probative weight attached by jurisprudence to a proposition of logic. It is an assumption made by the

law that a strong inference of fact is *prima facie* correct, and will, therefore, sustain the burden of evidence, until conflicting facts on the point are shown. When such evidence is introduced, the assumption of law is *functus officio* and drops out of sight. The inference of fact which has been assumed to be correct continues to have its logical weight in the case.''

Learned counsel for appellant contends that, under the above rule, the presumption that the note is genuine has been overcome by the testimony of appellant and her two corroborating witnesses, that the signature is not appellant's. But we are not called to determine whether the testimony thus produced by appellant is sufficient to overcome the *prima facie* genuineness of the note raised by the failure of appellant to comply with the statute, for the reason that appellee did not rest upon the statutory presumption. Appellee introduced in evidence a mortgage which purported to be signed by appellant and duly acknowledged by her. This mortgage was recorded. Counsel for appellant objected to the introduction of the mortgage on the ground that it was not the basis of the suit and had not been filed with any pleading in the case and was therefore not a paper that could be used in evidence for the purpose of comparing the signature thereon with the signature on the note to prove the genuineness of the latter. The court overruled the objection and permitted the appellee to introduce the mortgage.

Counsel for appellant says in his brief that the signing and execution of the mortgage was denied under oath, and that this mortgage was clearly inadmissible under the doctrine announced by this court in *Miller* v. *Jones,* 32 Ark. 337, where we held (quoting syllabus): ''Proof of handwriting may be made by comparison, by the jury, of the writing to be proved with other writings, admitted to be genuine, already in the case; but a comparison with writings not already in the case is not admissible.''

Now, when the mortgage was offered and introduced in evidence, appellant did not object to its introduction

on the ground that it was not signed by her, but only on the ground that "it is not sued on in this case, and is not a paper belonging to or filed with any pleading in the suit." Besides, as we construe the record, abstracted by appellant, the execution of the mortgage by appellant was not disputed when appellee was seeking to prove that the signature to the note was made by the same person who signed the mortgage.

The record shows the following on the redirect examination of witness Sharp by the appellee:

"Q. Now, I will ask you to take these two signatures and this signature to the mortgage introduced. The signature of Pearl Hughes to the mortgage and the signature on that note, and tell the jury whether they are the same.

"*Counsel for the defendant, W. N. Ivie:* I object to that. In the first place, there is no contest or dispute about these two signatures.

"*The Court:* You admit that they are by the same party?

"*Counsel for defendant, W. N. Ivie:* We do not admit that they are the same party, but we deny signing either note or mortgage. It is not disputed.

"*The Court:* If you do not dispute it, there is no use of going into it.

"*Counsel for defendant, W. N. Ivie:* We do not dispute it.

"*Counsel for plaintiff, C. M. Rice:* Let the record show, then, that there is no dispute.

"*The Court:* All right."

The above examination concluded the testimony on behalf of the appellee. The appellee testified, at the time the mortgage was introduced, that they (E. R. and Pearl Hughes) executed and delivered to him the mortgage to secure the note, and appellee's counsel then announced that the purpose of introducing the mortgage was to compare the signatures. Therefore, the manifest purpose of the above examination of witness Sharp was to show, by comparison of the signature to the note which

was in dispute, with the signature to the mortgage, the execution of which by appellant had been proved and was not· in dispute, that appellant had signed the note as well as the mortgage. The court evidently so understood it, and obviously counsel for appellant so understood it. If counsel wished to object to the mortgage on the ground that appellant had not signed same, then was the time for him to speak and let the court know that he made this additional objection to the mortgage as evidence. True, the appellant testified that she "signed neither one of them." But even at that time appellant did not ask to have the mortgage excluded, on the ground that it had not been signed by her.

We conclude, therefore, that the court did not err in admitting the mortgage in evidence for the purpose indicated. This mortgage and the admission of appellant's counsel in open court in connection therewith, to the effect that there was no dispute that the signature to the note was by the same party who signed the mortgage, were most cogent facts before the jury on the last trial that they did not have before them on the first.

In the case of *Miller* v. *Jones, supra,* papers that were not in evidence and that had been excluded were handed to the jury for the comparison of signatures on papers that were in evidence in the case, and we held that "it was error to allow the papers not in the case to be handed to the jury for a comparison with those read in evidence." That case has no application for the reason that here the mortgage was read in evidence and was a paper in the case.

Concerning the issue of coverture on the former appeal we said: "There is substantial proof in the case tending to show that the money was loaned to appellee on the statement that it was to be used for the purpose of going East to look after her separate property. If her signature was genuine, a question for the jury to determine, then the proof tended to show that appellee armed her husband with a negotiable instrument to raise money for her personal benefit, and she would be bound by the

statement of her agent thus authorized to raise money for her, to the effect that money was wanted for her personal benefit. Appellee's denial that the money was borrowed for her personal benefit or that of her separate property raised a question of fact for the jury to determine.''

On the issue of coverture the facts developed at the last trial are substantially the same as they were in the first trial. In all essential particulars there is no material difference. Hence what was said on this issue on the former appeal is controlling. *Hartford Fire Ins. Co.* v. *Enoch, supra; Ins. Co.* v. *Peak, supra.*

The court did not err in refusing to take the issues of *non est factum* and coverture from the jury. These issues were submitted under correct instructions.

Appellant, as one of the grounds of her motion for new trial, challenges the integrity of the verdict on account of alleged misconduct of one of the jurors as set forth in an affidavit attached to the motion. It could serve no useful purpose to set out and comment upon the contents of the affidavit. It suffices to say that we have considered the same and find that the trial court did not err in refusing to set aside the verdict because of alleged misconduct of one of the jurors.

There is no reversible error. The judgment is, therefore, affirmed.