BAUER v. NORTH ARKANSAS HIGHWAY IMPROVEMENT
DISTRICT No. 1.

Opinion delivered March 16, 1925.

1. CONSTITUTIONAL LAW—RELEASE OF LIABILITY OF PUBLIC OFFICERS.
—The Legislature may relieve a public officer and his bondsmen
from liability for loss of public funds, not occasioned by the
officer's fault, since individual taxpayers have no vested interest
in such funds, and there is no impairment of the obligation of
contracts.

2. CONSTITUTIONAL LAW—DEPOSITARY OF IMPROVEMENT DISTRICT—ACT
RELIEVING BONDSMEN FROM LIABILITY.—Special Acts 1923, p. 227,
relieving sureties on a bond given to indemnify a road improve-
ment district against loss of funds in a depositary bank, held
invalid, as impairing the vested rights of taxpayers in such
district.

3. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—On appeal a
verdict is conclusive if supported by evidence of a substantial
character.

4. DEPOSITARIES—INDEMNIFYING BOND—EVIDENCE AS TO SIGNATURES.
—Evidence held to support a finding that defendants signed a
bond to indemnify a road improvement district against loss of
funds in a depositary bank.

5. TRIAL—REPETITION OF INSTRUCTION.—It was not error to refuse
to give an instruction covered by one already given.

6. PARTIES—SUBSTITUTION.— Where the commissioners of an
improvement district abandoned a suit brought by them to enforce
the liability of indemnitors to the district, it was proper to permit
taxpayers of the district to be substituted as plaintiffs.

7. INDEMNIFYING BOND—LIABILITY OF SIGNERS.—Where defendants
signed an instrument without reading it, thinking it was a
petition when in fact it was an indemnifying bond, their negli-
gence will not relieve them from liability. where the bond was
accepted without knowledge of their mistaken belief.

8. INDEMNIFYING BOND—EFFECT OF FORGERY OF ONE SURETY'S NAME.—
In an action by a road improvement district against several
defendants as sureties on an indemnifying bond, where their
defense was that none of them signed the bond, an instruction
that the fact that the signatures of one of the defendants was
forged would relieve the other defendants from liability was
properly refused, though, under Crawford & Moses' Dig., § 8283,
such forgery would diminish the liability of the other defendants
by an amount equal to that which would have been contributed
by the defendant whose name was forged.

Appeal from White Circuit Court; *E. D. Robertson,* Judge; affirmed.

### STATEMENT OF FACTS.

On June 22, 1920, North Arkansas Highway Improvement District No. 1 of White County, Arkansas, by its commissioners, instituted this action in the circuit court against J. A. Bauer and others to recover the sum of $20,400, alleged to be due by them as sureties on a bond to said road improvement district to indemnify it against any loss by reason of depositing any funds by the commissioners with the First National Bank of Judsonia, Arkansas. The suit was defended on the ground that the sureties had been released from liability on the bond by special act of the Legislature.

The record shows that the names of all the defendants are signed to the bond. The bond was dated January 7, 1920, and the body of it is as follows:

"We, the undersigned, are hereby held and firmly bound to the above-named district in the sum of $30,000, to indemnify said district against any loss by reason of depositing any funds by the commissioners of said district in the First National Bank of Judsonia; that said bank being selected by the commissioners of said district in pursuance to act 213 of the General Assembly of the State of Arkansas for the year 1917."

Subsequently said bank became insolvent, and, according to the proof, a large sum of money belonging to the road district was on deposit there. After the affairs of the bank were wound up and the creditors paid pro rata, there still remains due and unpaid the sum of $6,120 belonging to said road district.

The plaintiffs introduced proof tending to show that the defendants signed the bond. On the other hand, the defendants testified that they did not sign it, and other evidence was introduced to corroborate their testimony.

Other facts will be stated under appropriate headings in the opinion.

From a verdict and judgment in favor of the plaintiffs the defendants have duly prosecuted an appeal to this court.

John E. Miller, C. E. Yingling, John D. DeBois, and P. R. Andrews, for appellants.

Brundidge & Neelly, for appellee.

HART, J., (after stating the facts). The main reliance of the defendants for a reversal of the judgment is that they were released from liability on the bond by reason of a special act of the Legislature. The Legislature of 1917 passed an act creating North Arkansas Highway Improvement District No. 1. Acts of Arkansas, 1917, vol. 2, p. 1149.

Section 22 of the act provides that the commissioners shall select such solvent banks as depositories for the funds of the district as they may deem for the best interest thereof. The section further provides that said depositories shall be required to give bond in such amount as the commissioners shall fix, equal to or in excess of the largest amount of deposits that such depositories are expected to have, conditioned that all funds of the district placed in such depositories shall be kept and preserved by them and repaid only on the lawful orders of the board of commissioners.

Pursuant to this act, the commissioners deposited a large amount of the funds of the district with the First National Bank of Judsonia and took a bond from the bank, as required by the statute. When the bank became insolvent and its affairs were wound up, it was ascertained that there remained due and unpaid of the funds of the district $6,120. The Legislature of 1923 passed an act to release the stockholders and bondsmen of the First National Bank of Judsonia, Arkansas, from liability to the North Arkansas Highway Improvement District No. 1 of White County, Arkansas. Special Acts of Arkansas, 1923, p. 227.

It is the contention of the defendants that this act is constitutional, and that the circuit court erred in not

so holding. They base their contention on the general rule laid down by this court and various other courts of last resort to the effect that the Legislature possesses the power to cancel liabilities of officers for money lost by them, when such loss was not occasioned by their wilful misconduct. *Pearson* v. *State,* 56 Ark. 138; *McSurely* v. *McGrew* (Iowa), 118 N. W. 415, 132 Am. St. Rep. 248; and *Miller* v. *Henry* (Ore.), 124 Pac. 197, 41 L. R. A. (N. S.), 97.

The syllabus of the Arkansas case reads as follows:

"The Legislature is not precluded from passing an act to release a county treasurer from liability for school and county funds stolen by burglars, without fault on his part, from a safe furnished him by the county, by reason of the provision of § 3, art. 14, of the State Constitution, which ordains that no school tax shall be appropriated to any other purpose than that for which it was levied, nor by the provisions of the State and Federal Constitutions that prohibit legislation divesting property rights or impairing the obligation of contracts."

All of these cases are based on the theory that the Legislature's power over taxation is only restricted by the limitations placed upon it by the Constitution, and therefore that it may relieve public officers from the loss of funds collected by general taxation where such loss is occasioned through no fault of the officer or his bondsmen. In all these cases, where the money is collected by general taxation, the individual property owners acquire no vested rights in the premises, and therefore there is no impairment of the obligation of a contract as prohibited by the Constitution of the State and by that of the United States.

A careful consideration of these cases leads us to the belief that this case does not fall within the general rule, and that the Legislature has no right to relieve the officer and his bondsmen from liability, unless the funds lost were raised by general taxation, and they must have

been raised by taxation on the political subdivision of the State to be charged with the burden.

In cases where a county treasurer, a county collector, or other county or township officer having charge of public funds, loses the same by theft, or by insolvency of a bank in which he has lawfully deposited such funds, the Legislature, by its control over taxation, may relieve such officer from liability occasioned by the loss, and place the burden upon the people to replace the lost funds. Because the funds are public funds, in which no person has any vested right, the Legislature may release the claim, though legally due, if, in its opinion, it would be unjust and oppressive to collect it.

It is true that the commissioners of an improvement district are public agencies intrusted with duties to the landowners of said district, but the funds which come to their hands are not collected by general taxation, and such commissioners are not officers of any political subdivision of the State. On the other hand, improvement district taxes are special taxes levied on the theory that the landowner receives a corresponding benefit. In short, improvement district taxes can only be levied to the extent that the benefits conferred are equal to or exceed the amount of the special taxes levied. Therefore, so far as improvement districts are concerned, we conclude that the individual landowners have vested rights which cannot be impaired by subsequent legislative enactment. To illustrate: Suppose the commissioners should let a contract for a public improvement where the amount was not greater than the benefits assessed, the contract would be valid, and the contractor and the landowners would both have vested rights in it. If the assessments of benefits amounted to $100,000, and the total cost of the improvement, including the overhead charges, was the same amount, it is evident that no loss of funds could be suffered without disturbing the private rights of some one. If the money collected by the levy of these local assessments was deposited in a bank and lost by the bank's

insolvency, either the contractor who constructed the improvement must lose a part of the fruits of his contract, or the landowners must be assessed more than the benefits received to make up such loss.

This court has repeatedly held that local improvement districts for constructing improved public roads may be created by the Legislature and commissioners may be appointed to construct such improvements. Contracts made by them for the construction of said roads, when made in conformity with the statute, have been uniformly upheld, and the landowners have been held to be bound by the final assessment of benefits.

The theory is that the commissioners are the authorized agents of the landowners, and, throughout the whole proceeding, act for them. The legal theory is that, when the district is formed and the assessment of benefits becomes final, the property owners have consented to the burden imposed upon their property by the act creating the district, and thereby become legally bound to pay the assessments. This gives them a private interest or vested right in the premises, and the imposition of additional assessments to meet losses occasioned by the funds being dissipated by the failure of a bank in which they are deposited, would impair the vested rights of the landowners.

As bearing on the question, and sustaining this view, we cite a decision of the Supreme Court of California reported in 144 Cal. 329, 77 Pac. 937, under the style of *Merchants' Nat. Bank of San Diego* v. *Escondido Irr. Dist.*

It is also insisted that the evidence is not legally sufficient to sustain the verdict. On this point but little need be said. It is our duty to view the evidence in the light most favorable to the plaintiffs, and to uphold the verdict if there is any evidence of a substantial character to support it. It is true that each of the sureties on the bond testified that they did not sign the bond. It is equally true that each of them testified that the signatures very much resembled their own genuine signatures.

Then, too, most of the defendants testified that they signed some kind of a paper which they thought was a petition of some sort.

On the other hand, three experts on handwriting compared the signatures to the bond with the admittedly genuine signatures of the defendants, and testified that, in their opinion, the signatures to the bond were genuine. There were seventeen names signed to the bond. When we consider the difficulty of forging this number of names to one instrument, in connection with the testimony of the expert witnesses to the effect that the signatures were genuine, and the further fact that most of the defendants testified that they signed some kind of written instrument, we are of the opinion that the evidence was sufficient to warrant the verdict. *Miller* v. *Jones*, 32 Ark. 337, and *Hughes* v. *Gardner*, 144 Ark. 282.

It is next claimed that T. H. Beals is not liable, because he denied signing the bond in his answer, and did not testify in the case, and no admittedly genuine signature of Beals was introduced in evidence. While this is true, one of the expert witnesses testified that, in his opinion, the signatures to the bond were genuine. This included the signature of Beals. The expert witness was a local banker in the county, and the jury might have inferred that he was familiar with the signatures of Beals without examining other signatures of Beals admitted to be genuine. Therefore we conclude that the evidence was legally sufficient to support the verdict as to Beals.

It is next insisted that the court erred in not giving an instruction which placed the burden of proof upon the plaintiffs. While the court did not give the instruction requested by the defendants on this point, we think that instruction No. 3, given at the request of the plaintiffs, covers this phase of the case. Instruction No. 3 reads as follows:

"You are instructed that none of the defendants are liable to the plaintiffs by reason of their being stockholders or officers of the First National Bank, and,

unless you find by a preponderance of the evidence that the defendants signed the bond as alleged in the complaint, then your verdict should be for the defendants.

It is next insisted that the court erred in allowing certain taxpayers to become parties plaintiff to this action.

After the Legislature of 1923 passed the special act releasing the sureties on the bond from liability, the commissioners passed a resolution to dismiss the case, and attempted to do so, on the theory that the special act was valid. Certain taxpayers objected to the suit being dismissed, and asked to be made parties plaintiff in their stead. The presumption is that the commissioners acted in good faith, but their action amounted to a refusal to carry on the suit and thereby protect the interests of the landowners, for whom they were agents. The commissioners were the trustees of the landowners in the management and in the application of the funds of the district. If, for any reason, they abandoned the suit for the recovery of the money, the taxpayers had a right to be substituted in their place. This principle is clearly recognized in *Russell* v. *Tate*, 52 Ark. 541, and other cases decided by this court.

The next assignment of error is that the court instructed the jury in substance that, if it should find from the evidence that some of the defendants signed the bond sued on, and were told by the officers of the bank that it was a petition, and signed it with that belief, still if it should find that they had the bond before them and failed to read it, the plaintiffs would be entitled to recover.

All the defendants except one testified that they signed a petition at the request of one of the officers of the banks, and denied that they signed the bond sued on. The names of the defendants appear as signers of the bond, and, if they signed it without reading it, under the belief that it was a petition of some sort, this would not relieve them from liability on the bond. The rea-

son is that they could all read, and could not relieve themselves from liability in signing an instrument by their negligence in failing to read it.

The commissioners of the district had no knowledge that they had signed the bond under the belief that it was a petition of some sort. Therefore the instruction falls within the principles announced in *Hardy* v. *Ouachita Nat. Bank of Monroe,* 165 Ark. 532, and there was no error in giving it.

It is next insisted that the court erred in rendering judgment against the defendants because counsel for the plaintiffs conceded that there was not sufficient testimony to warrant a judgment against the defendant J. H. Orr. In other words, the effect of the admission of counsel for the plaintiffs during the trial of the case was that the signature of J. H. Orr was not his genuine signature. No judgment was taken against Orr on the bond, and it is claimed that the admission that his signature was not genuine released the other defendants from liability on the bond.

This contention is contrary to the provisions of § 8283 of Crawford & Moses' Digest. Under that section the liability of the other signers to the bond could only be diminished by an amount equal to that which would have been contributed by Orr to discharge the common liability. Therefore there was no prejudice in refusing to instruct the jury that the fact that Orr's signature was forged would relieve the other defendants from liability on the bond. See *Johnson* v. *T. M. Dover Merc. Co.,* 164 Ark. 371.

It follows that the judgment must be affirmed.