**STATE ex BOLSINGER v SWING, etc et**

Ohio Appeals, 1st Dist, Hamilton Co

No 5086. Decided Sept 21, 1936

66

Bolsinger & Hoodin, Cincinnati, and Sidney C. Brant, for appellant.

Louis J. Schneider, Cincinnati, Walter M. Locke, Cincinnati, and I. Jack Martin, Cincinnati, for appellees.

## OPINION

By MATTHEWS, J.

This is an appeal on questions of law from the judgment of the Court of Common Pleas of Hamilton County, deciding in favor of the appellees the issue raised by an appeal from an order of the county commissioners releasing the county treasurer and the sureties upon his bond from liability on account of the loss of $5,000.00 occurring without fault or negligence on the part of the treasurer. §2303, GC, it was, and is, claimed, authorized this action by the board. It is provided by that section that:

"When a loss of public funds, entrusted to a county, city, village, township, or school district treasurer, by virtue of his office, heretofore or hereafter results from fire, robbery, burglary, or inability of a bank to refund public money lawfully in its possession belonging to such public funds, the county commissioners, township trustees, a city or village council or a board of education, respectively, may release and discharge such treasurer and the sureties upon his official bond, from all liability to or demands of such county, township, city, village or school district, for loss so created and arising."

By §2304, GC, it is provided that:

"Before such release and discharge shall be effected, the board of county commissioners, township trustees, city or village council or board of education shall find that the treasurer was entrusted by law with the care of such public funds, and that the loss thereof was not occasioned by his fault or negligence, and an entry of such findings shall be made upon the record book of the proceedings of such council or board."

By §2305, GC, provision is made for appeal by a taxpayer to the Common Pleas Court.

By §2306, GC, it is enacted that:

"The Common Pleas Court shall proceed to try and determine the question whether such public funds were lost by the fault or negligence of the treasurer. If it be found that the funds were so lost, the finding of the board or council ordering the discharge shall be vacated. If it be found that the funds were not so lost, the finding shall remain in full force and the court shall cause its judgment to be certified to the board or council making such finding."

In the original act there were provisions whereby the question of the release of the treasurer could be submitted to the voters of the political entity by the board, and upon the petition of twenty-five per cent of the voters it was mandatory that it be so submitted. These provisions were repealed in 1929 along with several hundred other sections on the ground that they were "obsolete, unconstitutional, or unnecessary."

In the application of the county treasurer for release he recited that the loss was occasioned by theft and in the resolution of the county commissioners, releasing him, it is recited: "A part of these funds in the sum of Five Thousand ($5,000.00) Dollars has been lost by theft on June 26th, 1935," and that: "this loss by theft was not occasioned by the fault or negligence of said treasurer."

There is abundant evidence in the record that the treasurer was without personal fault or negligence. There is evidence that the money disappeared from the compartment of a civil service employee in the

treasurer's office under such circumstances as to make the question of whether such employee was without fault or negligence an issue of fact, and as the commissioners found the treasurer to be without fault or negligence and the trial court reached the same conclusion, this court would not be justified in disturbing that finding if the commissioners and Common Pleas Court had jurisdiction to decide that issue, even assuming that the treasurer was chargeable as a principal with the acts of omission or commission of the civil service employee in his office. That the custodian of public funds is liable for the embezzlement of a civil service employee in his office was decided in United States v Bryan, 32 Fed. 290, 53 L.R.A. 218.

The loss of this money was not occasioned by either robbery or burglary within the common law meaning of those terms. All the evidence is that the loss occurred in the daytime when the court house, a part of which was used as the office of the treasurer, was open. There was no evidence of a taking from any person by force or putting in fear. Indeed the only evidence of the way it disappeared is circumstantial. There is evidence that the civil service employee left it on the counter when he went to lunch and that it was stolen during his absence. Before leaving for lunch he had pulled down the curtain at the window of his compartment, placing a coin machine on and against it to hold it in place. When he returned he noticed that this coin machine had been pushed to one side and the curtain disturbed. Later he noticed the absence of the money from the counter.

It is a fair inference that someone reached through the window with some sort of an instrument and pulled the money within reach of his hands. There is also evidence that it could have been knocked to the floor by something inserted from an adjoining cage. The former is probably the stronger inference.

On this state of the record, we must assume that this money was lost as the result of larceny or theft as found by the county commissioners.

The jurisdiction of the county commissioners was dependent upon the existence of one of the causes of loss— fire, robbery, burglary, or inability of a bank—recited in the statute. Before they could inquire into the question of the treasurer's fault or negligence, one of these jurisdictional facts must exist. Being a tribunal of limited jurisdiction, the existence of the jurisdictional fact or facts will not be presumed. In 11 **Ohio Jur.**, 712, et seq. it is said:

"In the case of tribunals of special and limited jurisdiction, no presumption arises in favor of their jurisdiction, but it is necessary that such tribunals show that they acted within the scope of their powers. Presumptions in favor of the validity of judgments and orders of inferior courts and tribunals arise only where it affirmatively appears in the record that the court or tribunal had jurisdiction of the subject-matter of the action or proceeding, and of the parties litigant."

And when the authority of an administrative officer, board or tribunal can be exercised only in the presence of certain facts, it must appear that such officer, board or tribunal found such facts to exist. In Panama Refining Co. v Ryan, 293 U. S., 388, this rule was applied to the President of the United States in the exercise of administrative authority, not of a purely executive character, conferred upon him by Congress. At pages 432 and 433 the court says:

" 'When, therefore, such an administrative agency is required as a condition precedent to an order, to make a finding of facts, the validity of the order must rest upon the finding. If it is lacking, the order is ineffective. It is pressed on us that the lack of an express finding may be supplied by implication and by reference to the averments of the petition invoking the action of the Commission. We can not agree to this.' Referring to the ruling in the Wichita case, the court said in Mahler v Eby, 264 U. S. 32, 44: 'We held that the order in that case made after a hearing and ordering a reduction was void for lack of the express finding of the order. We put this conclusion not only in the language of the statute but also on general principles of constitutional government'."

In this case, however, we are not required to rely on this rule because the record affirmatively shows that the jurisdictional fact did not exist. The legislature did not confer jurisdiction upon the county commissioners to release the county treasurer for loss occasioned by theft. It is true the legislature could release under

such circumstances, but it has not delegated such authority. The legislature evidently intended to reserve to itself the power in such cases to be determined by it in accordance with its view of the facts of the specific case.

But it is urged that there is evidence that this theft was committed under such circumstances as to constitute the offense of maliciously entering a treasury to attempt to commit a felony, as that offense is defined in §12441, GC, and also the offense of maliciously breaking and entering, defined by §12242, GC, and it is argued that the legislature did not use the terms "robbery" and "burglary" in the common law sense, but did use them to include all the statutory offenses into which the elements of these common law offenses have been expanded, and that these circumstances satisfy the jurisdictional requirement. Specifically, it is argued that this loss was occasioned by the commission of the crime of breaking and entering with intent to steal as defined in §§12441 and 12442, GC, and that this is within the purpose of the statute. Predicating the argument upon the assertion that the legislature had not denominated any offense as burglary, it is urged that the meaning of the term in §2303, GC, must be determined by the related statutory offenses collected under the sub-head "Burglary and other breaking" in Chapter 4 of Title I of Part Fourth of the General Code.

A sufficient answer to this argument is that neither the treasurer nor the county commissioners asserted or found the facts upon which it is predicated. And a further answer is that the legislature has denominated certain crimes as burglaries, and the circumstances presented do not constitute such crime. It is true that the section does not specifically state that the crime defined shall constitute burglary but the section is so headed and that title was given to it by the legislature ▆▆▆▆▆▆▆▆▆ and not by any other officer or agency. In 37 **Ohio Jur.**, at pages 681, et seq., it is said:

"It is now the generally accepted view both in England and in this country that the title of an act is so far a part of the same that it may be resorted to where the meaning of the act is ambiguous for the purpose of ascertaining the true meaning. This is the rule in Ohio, even though the title is no part of the substantive law. Especially is this proper, where, as in Ohio, the title is prefixed by a solemn vote of the legislature passing the law, and where there is a constitutional provision that no bill shall contain more than one subject. which shall be clearly expressed in the title. The use of a particular word in the title has also been referred to by the court to show that the same word used in the body of the act was not placed therein carelessly or inconsiderately."

It is clear that the determination of the extent of the liability of county treasurers rests solely with the legislature, as the policy determining department ▆▆▆▆▆▆▆▆ of the government. And when the legislature has established the standard of liability it has full power to commit the application of that standard to specific cases to an administrative officer or board. State v Davis, 178 Ark. 153. The judicial function may be limited to a determination of whether the administrative officer or board has acted within the power conferred upon it, limited by the due process clause of the constitution. Colyer v Skeffington, 265 Fed. 17; De Vertenil v Knaggs (Privy Council [1918] A. C. 557). The statute may of course confer wider power of judicial review. Marsh v County Commissioners, 26 W. L. W. 3; **Miller v Weber, 1 C.C. 130.**

According to the great weight of the authoilties it is within the constitutional power of the legislature to relieve a public officer and his sureties from ▆▆▆▆▆▆▆▆ liability for a loss of funds by general tax **after such liability has been incurred** when the loss was occasioned without fault or negligence. Or where payment of the loss has been made by the officer or surety, the legislature has power to make reimbursement from funds raised by general taxation. Bauer v North Arkansas Highway Improvement District, 38 A.L.R., 1507, 270 SW 533, (Ark.); Bolivar Township, etc. v Hawkins, (Ind.), 191 NE 158, 96 A.L.R. 270.

And, of course, there can be no doubt about the validity of general laws of this character operating prospectively.

In the absence of any specific statute the law of Ohio imposed upon officers intrusted with public funds the ▆▆▆▆▆▆▆ liability of insurers of the safety of such funds and accepted no excuse for their loss except the act of God or the public enemy. **32 Ohio Jur., (§97) pages 957, et seq.; State ex v Harper, 6 Oh St 607; Eshelby v Cincinnati Board of Education, 66 Oh St, 71; Seward v National Surety Co., 120 Oh St, 47.** The

fact that the treasurer was without fault' was no defense. Id. It is apparent that this rule is a harsh one and under certain circumstances might work great injustice. And it is manifest that it was the purpose of the legislature by enacting §§2303, et seq. GC, not to change the rule of liability, but to place it in the power of the county commissioners to relieve from such liability in certain specific cases where the treasurer could demonstrate that he was without fault or negligence. Prior to the enactment of this general law it was the custom to appeal to the legislature for relief from liability after the loss had occurred; and apparently many special acts were passed. The basis of relief was always that the treasurer was without fault or negligence. These specific acts were sustained against the charge of unconstitutionality. **Board v McLandsborough, 36 Oh St, 227; State v Board of Education, 38 Oh St 3.** In these acts were provisions for submission of the question of release to a vote of the people.

It is clear that the legislature did not and could not, give to the county commissioners unrestrained power to release and discharge treasurers from liability. Such power would be arbitrary and lacking in due process.

Before the county commissioners could act at all, the loss must have occurred in one of the ways specified in §2303, GC. The existence of a loss from one of the specified causes is jurisdictional. Where, however, jurisdiction of a tribunal to act is dependent upon the existence of a fact or facts, such tribunal necessarily must determine the existence of such fact or facts. Freeman on Judgments (5th ed.) Vol. 1, §350. And its determination supported by evidence will not be disturbed. But the difficulty in this case is that the findings distinctly contradict the existence of such facts, even assuming that they would confer jurisdiction.

Nevertheless, reverting to that section (§2303 GC) what did the legislature mean by the language used. In  two instances—fire and inability of depository bank— the cause of the loss has no necessary relation to a criminal act. In the other two instances—robbery and burglary—the cause of the loss must be a criminal act.

"Robbery" is defined in §12432, GC. Its essence is force or violence or putting in fear. A larceny unaccompanied by either force or violence or putting in fear cannot be robbery. The crime stands apart. It

is sui generis. It has the same elements under the statute as at common law. The legislative intent is clear.

This cannot be said of the crime of burglary. At common law burglary was limited to a breaking and entering of a building either used as a place of human habitation or in some way connected with such a place. It was substantially limited to an invasion of the sanctity of the home. Under the statute, burglary has been greatly extended. As the sub-title indicates it is classed as a "breaking" into a building without reference to the character of the building. The offense defined by §12437, GC, which is headed "Burglary in an inhabited dwelling" is the nearest statutory approach to the common law crime of burglary, but is more restricted. Clearly the legislature did not intend to limit the power of the county commissioners to losses thus occurring. It would be hard to conceive of a loss of public funds resulting from such a crime.

The following section (§12438 GC) defines the crime of breaking and entering of any building, other than an inhabited dwelling, in the night season. It is headed "Burglary in an uninhabited dwelling or other building." This offense is in some respects an enlargement and in other respects a restriction of burglary as defined by the common law.

It will be observed that the title to each of these sections does not imply that the section defines the crime of burglary generally, but does imply that the section defines a particular type of burglary.

Sec 12441, GC, under the same sub-title "Burglary and other breaking," provides that "Whoever, by day or night maliciously enters a dwelling house, kitchen, shop—treasury—and attempts to commit a felony, shall be imprisoned."

By §12442, GC, it is enacted that "Whoever, in the daytime, maliciously breaks and enters a dwelling house—or other building, with intent to steal or to commit a felony shall be imprisoned."

These last two sections are not described in their titles as burglaries. In many jurisdictions, crimes similar to those defined by §§12441, and 12442, GC, are expressly characterized as degrees of burglary, such as burglary in the 1st, 2nd, and 3rd degree.

However, it seems to us that as there is a specific crime denominated "Burglary" in our statutes (§11438 GC) the legislature

must have referred to that crime by the language used in §2303, GC. We have concluded that it would be a strained construction to hold that the legislature intended to delegate its authority to release in any case other than those expressly provided, and, as it did not provide for a release in cases of larceny or housebreaking, the county commissioners, had they found the loss to have been thus occasioned, would have had no jurisdiction to hear the evidence as to whether the treasurer was without fault or negligence. We reach this conclusion all the more readily, as it is within the power of the legislature to grant releases in specific meritorious cases as they arise.

The finding of the Common Pleas Court that the treasurer was without fault or negligence, was therefore, beyond its jurisdiction, and is therefore void.

The judgment of the Common Pleas Court is reversed and the cause remanded to that court with instructions to issue a mandate to the county commissioners to dismiss the proceedings before them.

ROSS, PJ, and HAMILTON, J, concur.