GREEN *v.* WULFF DRAINAGE DISTRICT No. 4.

4-4604

Opinion delivered April 26, 1937.

W. A. Leach and Joseph Morrison, for appellants.

A. G. Meehan, J. M. Brice and John W. Moncrief, for appellees.

McHANEY, J. Appellants are taxpayers in appellee district, which was organized in 1911 under the "Alternative Drainage System Act" of 1909, §§ 3607-3666, Crawford & Moses' Digest. It has continued to function as such from its organization to this time. On June 13, 1911, it entered into a construction contract with E. J. Hahn Construction Company to dig its ditches and laterals on a yardage basis, and payment was to be made in bonds of the district. The district appears to have been originally organized in 1908 under a previous statute, a preliminary survey made and a map or plat filed, which is referred to in the record as the "Maxwell Plat." This organization was abandoned and the district was reorganized in 1911 as above stated. Another survey was made and a plat filed, which is referred to as the "Fitzhugh Plat." The contract for construction was carried out, taxes were levied and collected from year to year on the benefits assessed against the lands embraced in the district, and on October 21, 1912, the engineer submitted his final report and estimate, showing the construction of the main canal and fifteen laterals, from which had been removed 244,942.1 cubic yards of earth at a total cost of $48,939.43. It also showed the contractor had been paid $44,580.26, leaving a balance of $4,309.17, for which

the district issued its certificate of indebtedness, and the contractor was paid in full. The bonds and certificate were all paid and retired, the final payment having been made in 1931, and on December 31 of that year the district had on hand a cash surplus of $5,515.23. In 1927-1929, at the instance of appellants, or some of them, the district, with its tax funds, made certain improvements to prevent flooding of a highway in which all taxpayers were interested.

In 1932, certain of the appellants who had not paid their 1930 tax on betterments, filed suit to enjoin the district from collecting a tax against them, and later another appellant, for herself and all other taxpayers who had paid the, 1930, taxes, intervened, praying a distribution of the cash on hand among the landowners who had paid the 1930 assessment, on the theory that the district's funds at the close of 1930 were sufficient to retire all bonds and interest maturing in 1931 without collecting in 1931 the 1930 tax. Appellee, district, answered that construction had not been completed according to plans and specifications, and that it should be permitted to use the funds on hand to complete construction, and to repair and maintain the ditches.

The trial court found against appellants and dismissed the complaint and intervention for want of equity. The case is here on appeal.

As we view the record, the questions presented are: Was the construction completed, and if not, does the right now exist to complete same and use the funds on hand to pay the cost thereof? May the funds now on hand be used to repair and maintain the improvement?

■ As to whether the work, contemplated by the plans and specifications as originally filed, has been completed, a question of fact is presented. All persons connected with the district, when organized and when the Hahn contract was carried out, are now dead. The plans and specifications filed with the county clerk are lost. There is on file the "Maxwell Plat," which was a preliminary survey, and the "Fitzhugh Plat," as, also, some of the profiles. Three engineers testified for appellee, as did,

also, the present commissioners of the district. One of the engineers is the county surveyor of Arkansas county. All the engineers agree, after a careful examination of all the maps, plats, profiles, petitions, court orders and minutes of the board of commissioners, as well as a careful examination and inspection of the work done, that the drainage system was still incomplete. There is no evidence to dispute them, except the lapse of time and the fact that Hahn completed his work and the district settled with him in full. The Hahn contract was on a yardage basis, and the fact that he was paid for the number of yards of earth removed would not be conclusive of the question. We think it fairly certain that the plans contemplated a physical connection of the main canals in section 14, township 4 south, range 5 west, which was never completed; also, certain work called for by the plans in Rich Bayou on the King's Bayou section of the drainage system.

The funds that are now on hand are primarily construction funds. They were collected for payment of construction debts. The original assessment of benefits was based largely on the cost of the proposed improvement as shown by the plans and specifications, and if the construction was never completed as authorized by the plans, then it necessarily follows that the funds now on hand may be used to complete the work as originally planned. The trial court found that the work had not been completed, and we think such finding is supported by the preponderance of the evidence; at least, we cannot say it is against the preponderance of the evidence.

Moreover, there is another reason why the funds now on hand should not be refunded to the, 1930, taxpayers. It appears that the ditches need preservation work. Section 3630, Crawford & Moses' Digest, reads as follows: "The district shall not cease to exist upon the completion of its drainage system, but shall continue to exist for the purpose of preserving the same, of keeping the ditches clear from obstructions and of extending, widening or deepening the ditches from time to time as it may be found advantageous to the district. To this end

the commissioners may from time to time apply to. the county court for the levying of additional taxes. Upon the filing of such petitions, notices shall be published by the clerk for two weeks in a newspaper published in each of the counties in which the district embraces lands, and any property owner seeking to resist such additional levy may appear at the next regular term of the county court and urge his objections thereto, and either such property owners or the commissioners may appeal from the finding of the county court.''

Under this statute the board should preserve or repair the ditches by keeping them clear of obstructions, and they may extend, widen or deepen the ditches, and they may apply to the county court for the levy of "additional taxes." If they have a sufficient sum of money on hand, there would be no necessity for the levy of "additional taxes." We perceive no sound reason why such money should not be expended for the preservation of the district, as it inures. to the benefit of all the property in the district. But all property owners should be kept on a parity by requiring all to pay alike. Of course, if further funds are needed for preservation purposes, the procedure provided in § 3630, above quoted, must be followed.

Appellants cite and rely on *Paving District No. 5 v. Fernandez,* 142 Ark. 21, 217 S. W. 795; *Bourland.v. Southard,* 185 Ark. 627, 48 S. W. (2d) 555, and *Benton v. Nowlin,* 187 Ark. 738, 62 S. W. (2d) 16, to support their contention that the surplus funds on hand must be distributed back to the taxpayers. But these are municipal improvement district cases,. controlled by the constitutional provision requiring the consent of the majority in value of the property owners, whereas rural improvement districts are not so circumscribed. The Constitution, Art. 16, § 11, prohibiting the use of tax moneys for any other purpose than that for which the tax was levied, applies to general taxation only, and not to local assessments. *McAdams v. Henley,* 169 Ark. 97, 273 S. W. 355, 41 A. L. R. 629. Moreover, the proposed use to which the funds on

hand will be put is not a diversion thereof, but for the necessary purposes of the district.

We are, therefore, of the opinion that the court properly dismissed the complaint as being without equity, and the decree is accordingly affirmed.

SMITH, C. J., SMITH and MEHAFFY, JJ., dissent.