[No. 29751. Department One. October 8, 1945.]

THE CITY OF SHELTON, *Respondent*, v. JORDAN CLAPPER *et al.,* *Appellants.*[1]

*J. W. Graham,* for appellants.

*Chas. R. Lewis,* for respondent.

MILLARD, J.—The city of Shelton is a municipal corporation of the third class. Its treasurer appointed Jordan Clapper deputy city treasurer, February 20, 1942, which position he held until March 4, 1943, on which date he became acting treasurer of the city of Shelton in which capacity he served until September 22, 1943. It was the duty of the deputy city treasurer to maintain his office within the city hall and to collect water rentals, which he was required to deliver to

[1] Reported in 162 P. (2d) 445.

the city treasurer, who had his office in another building, and who did not attend to any of the duties having to do with the actual collection of rentals from the various water users. As deputy treasurer, Clapper was required to give surety bond to the city of Shelton in the sum of five thousand dollars conditioned as follows:

"Now, THEREFORE, If the said Principal shall well, truly, faithfully and impartially perform, fulfill and discharge all the duties required of him by law, as such *Deputy Clerk and Deputy Treasurer* and shall well, truly, faithfully and impartially fulfill the duties of said office as such duties are prescribed by any law which may be enacted subsequent to the execution of this Bond *and shall well* and truly account for all monies and securities which may come into his possession as such deputy Clerk and Deputy Treasurer, then this obligation to be void; otherwise, to remain in full force and effect."

The duty of making water collections was solely the duty of Clapper as deputy treasurer. When Clapper became acting city treasurer March 5, 1943, he was required to give a surety bond in the amount of twenty thousand dollars to the city of Shelton conditioned as follows:

"Now, THEREFORE, If the said Principal shall well, truly, faithfully and impartially perform, fulfill and discharge all the duties required of him by law, as such *Acting Treasurer* and shall well, truly, faithfully and impartially fulfill the duties of said office as such duties are prescribed by any law which may be enacted subsequent to the execution of this Bond, and shall account for all monies which may come into his possession by virtue of his office, then this obligation to be void; otherwise, to remain in full force and effect."

An adding and receipt machine for keeping account of the water collections was used by Clapper, during the time he was deputy treasurer and acting treasurer. On top of the machine was a key which, when removed, would render impossible the taking of a subtotal or total of the collections.

The city ordinance did not require the deputy treasurer or acting treasurer to keep his office open between twelve noon and one p. m. Clapper, doubtless for the convenience of the citizens, kept his office open during the noon period. His

luncheon hour was from twelve-thirty p. m., to one-thirty p. m., during which period he called in the chief of police or the chief of the fire department to make water collections. Whenever he was out of the office, he authorized one of the two officials named to accept water rentals. There is evidence that it had for many years been a custom, known to the city officials, to permit others than the bonded employee to make water collections. During the time that Clapper was deputy treasurer and acting treasurer, he never removed the key from the adding and receipt machine so a subtotal or total could not be taken. He never added his receipt stubs to compare with the day's total on the adding machine tape.

When examining the city's books in August and September, 1943, the state examiner discovered, in adding the duplicate water receipts and comparing the result therefrom with the total on the adding machine tape, a shortage. A further investigation was made which disclosed a shortage in the amount of $631.73, during the period Clapper was deputy treasurer, and a shortage of $143.50, during the period he was acting treasurer. The state examiner found that the shortages were due to manipulation of the machine used in recording payments. That is, a piece of cardboard had been inserted in front of the tape, and the amount received did not show on the tape but showed on the carbon back. A subtotal was rung up on the cardboard but did not appear on the tape; it appeared on the carbon back, and such subtotal, less the amount appearing on the cardboard, was rung in as total collections to that time. The cardboard was removed, and, at closing time when the subtotal was rung, the cash and the subtotal on the adding machine tape agreed. This method of manipulating the machine was used at different times of the day. The city treasurer had no deputy other than Clapper, who the city treasurer testified was the only person authorized to make collections. Mr. Clapper testified that he did not know at any time, including the time of the trial, how to manipulate the machine, and that he never converted to his own use the moneys involved herein.

An action was brought by the city against the marital community composed of Jordan Clapper and wife and Clapper's surety on two causes of action:   First, for the shortage resulting while Clapper was deputy city treasurer; and, second, for the shortage occurring while Clapper was acting city treasurer.   Defendants demurred on the grounds that, as to the loss of city funds, the primary liability rested upon the city treasurer rather than upon his deputy, hence there was a defect of parties defendant; and that the complaint did not state facts sufficient to constitute a cause of action against defendants, as there was no allegation of conversion of the funds or negligence resulting in their loss.   The demurrer was overruled.   Trial of the cause to the court resulted in judgment in favor of the city and against the defendants for the shortages in question.

Counsel for appellants concedes that the overruling of the demurrer to the first cause of action on the ground of defect of parties is not a matter of serious consequence to appellants.   It is plain that the treasurer was not a necessary party.

It is unnecessary to review the many authorities cited by respondent and the appellants on the question whether, in the absence of a constitutional or statutory mandate, persons charged with handling public funds should be held to strict accountability for such funds.   We are convinced that, upon the broad ground of public policy, persons charged with handling public funds should be held to strict accountability for such funds irrespective of the cause of their loss, hence it is unimportant whether respondent proved personal conversion of the funds by Clapper, or that the money was lost through his negligence.   We enunciate the rule in this state to be that in an action on the official bond of a public officer for loss of public moneys in his custody, it is no defense that the money was lost without fault or negligence on his part.

In *Swift v. Trustees of Schools*, 189 Ill. 584, 60 N. E. 44, it is held, following *Thompson v. Board of Trustees*, 30 Ill. 99, that under the Illinois statute, township treasurers are made insurers of the funds coming into their possession, and

nothing can relieve them from their obligation to safely keep and pay over such funds but the act of God or of the public enemy. The court stated, however, that the liability of the treasurer arises out of his official bond, by which he makes an express contract with the township that he will keep safely the moneys which shall come to his hands; that the undertaking is one safely to keep the money by the force of the language of the condition of the bond, independent of the statutory provision requiring the township treasurer to demand, receive, and safely keep, according to law, all moneys, books, and papers of every description belonging to his township. In the Illinois cases cited, as in the case at bar, the defendant was required to receive money, which implied, without any other special regulations, that the treasurer was to keep it safely, one of the duties of his office he had undertaken faithfully to discharge. In *Thompson v. Board of Trustees, supra,* the court said:

"In no sense, is this a case of bailment. The liability of the treasurer arises out of his official bond. He has made, by that bond, an express contract with the trustees, that he will keep safely the moneys which shall come to his hands. It is so 'nominated in the bond,' when that is read in the light of the statute prescribing his duties, and considerations of public policy forbid that he should be permitted to avail of any extraneous fact outside of the condition of the bond. The treasurer well knew and understood the contract he had entered into, and the extent of the obligation he had voluntarily incurred, and he has obtained all he contracted for— the possession of the office, with the emoluments attached to it.

"We think there is no principle on which the defense can be sustained, the contract being absolute, without any condition, express or implied. In these days of remorseless peculation upon the public, by its functionaries, indeed, at all times, public policy demands, that depositaries of the public money should be held to the most rigid accountability, within the terms and scope of their covenants.

"They know well, on assuming their positions, the hazards to which they are exposed, and they voluntarily assume the risks, and are paid for so doing."

In the case at bar, appellant Clapper, as deputy treas-

urer and acting treasurer, gave a bond to the city of Shelton, which held him liable to the city for water rentals which he alone was authorized to collect. He alone had charge of the office in the city hall where the collections were made. By the terms of the two bonds, Clapper was to account for all moneys coming into his possession by virtue of his office. He made, by the bonds, an express contract with the city of Shelton that he would keep safely the moneys which came into his hands. Public policy forbids that he should be permitted to avail, as stated in *Swift v. Trustees of Schools, supra,* of any extraneous fact outside of the condition of the bond. The obligation of a public officer who receives, as Clapper received, public moneys under a bond conditioned that he would discharge his duties according to law, and well and truly account for all moneys and securities which might come into his possession as deputy treasurer and as acting treasurer, is not to be determined by the principles of the law of bailment, but by the special contract evidenced by his bond. Clapper was a municipal officer having the care of public moneys, and, by virtue of his office, he was an insurer of the same and is liable for loss of such moneys, although the loss occurred without any fault or negligence on his part, unless the loss was caused by the act of God or the public enemy. See 43 C. J. 721; *Oklahoma City v. Century Indemnity Co.,* 178 Okla. 212, 62 P. (2d) 94; *State ex rel. Bolsinger v. Swing,* 54 Ohio App. 251, 6 N. E. (2d) 999; *Smythe v. United States,* 188 U. S. 156, 47 L. Ed. 425, 23 S. Ct. 279, and 2 McQuillan, Municipal Corporations (2d ed.) 382, § 561.

The judgment is affirmed.

BEALS, C. J., STEINERT, SIMPSON, and MALLERY, JJ., concur.