The Honorable Bill H. Stovall, III State Representative 2324 Heber Springs Road West Quitman, AR 72131-9426
Dear Representative Stovall:
I am writing in response to your request for an opinion on several questions that have arisen following the issuance of Attorney General Opinion 2001-023 concerning the Skypoint Suburban Improvement District ("SID") and Skypoint Estates Subdivision and Improvement District Property Owners, Inc. ("SPOA"). The specific questions that have been presented are as follows:
 1. Can the SID allocate a portion of the taxes collected (all from SPOA members) to the SPOA for our operating expenses?
It is stated with regard to this question that since the formation of the SID, the SID and the SPOA have operated together, that funds were co-mingled, that the SPOA now has no funds for operation, and that the SPOA membership strongly believes that it was always intended for some amount to be transferred to the SPOA for its operation.
 2. Is the SID limited to the list of items included in the 1978 petition, i.e., maintenance of roads, airstrip, boat ramp, and park? Or can they expand their authority to complete any other projects they choose, e.g., the installation of additional fire hydrants?
It is stated in this regard that according to the last sentence of the 1978 court order approving the creation of the SID, ". . . they may do all things legitimate and in accord with the desires of the property owners not in consistent [sic] with the laws of the State of Arkansas." The SPOA has asked whether this means that the SID can spend tax dollars for anything they choose, and if so whether they can allocate a percent to the SPOA as mentioned above.
 3. Are there any state laws or any other restrictions which prohibit the SID from meeting with the SPOA informally at our semi-annual meetings as they always have to answer questions about their projects and how our tax money is being spent?
RESPONSE
It is my opinion that the first question presents an issue that can only be decided in the first instance by the SID, with the advice of its legal counsel. I lack both the resources and the authority to make this determination, which depends largely upon the particular facts and circumstances. The answer to the second question is determined by the petition for the creation of the SID and the final court order approving its creation, viewed in light of the state law governing the SID's formation and operation. The purpose of the SID is stated in the final order. It is my opinion that the SID has authority to take all action deemed necessary or useful to operate and maintain the improvements and facilities enumerated in the order. With regard to the third question, it is my opinion that the SID may meet with the SPOA at the SPOA's semi-annual meetings, or at other times, at the discretion of the SID board of commissioners. Such meetings would, however, likely be subject to the open meetings provision of the Arkansas Freedom of Information Act ("FOIA").
Question 1 — Can the SID allocate a portion of the taxes collected (allfrom SPOA members) to the SPOA for our operating expenses?
I cannot conclude, based simply upon the recited history, that the SID is authorized to allocate a portion of its funds to the SPOA. Rather, in my opinion, this action will require a factual showing that funding the operation of the SPOA is currently useful or necessary for the operation and maintenance of the district's improvements and facilities. Also inherent in such a showing is the well-established requirement that the board of commissioners of an improvement district must act for the benefit of all property owners in the district. Cherokee VillageHomeowners Protective Association v. Cherokee Village Road and StreetImprovement District, 248 Ark. 1055, 455 S.W.2d 93 (1970). See also Bauerv. North Arkansas Highway Improvement District, 168 Ark. 220,270 S.W. 533 (1925) (stating that the commissioners of the improvement district are the trustees of the landowners in the management and in the application of the funds of the district).
The board of commissioners has the power, in accordance with A.C.A. §14-92-210 (5), to "[p]erform all actions useful to carry out the purposes of this subchapter[.]" The district is further authorized to "do any and all other actions which shall be deemed necessary in order to . . . operate and maintain any and all improvements and facilities. . . ." A.C.A. § 14-92-220 (a). The board may also "employ such agents . . . as it deems best. . . ." A.C.A. § 14-92-207 (b) (1) (B). The SID board of commissioners could conceivably, based upon these provisions, decide that allocating a portion of its taxes to the SPOA is justified. Ultimately, however, the question will be whether the particular facts and circumstances support the board's decision. It may be important to note in this regard that although an "illegal exaction" action will not lie in the case of local assessments by an improvement district,[1] a court of equity does have jurisdiction to prevent the misapplication of improvement district funds. See generally Keenan v. Williams,225 Ark. 556, 283 S.W.2d 688 (1955). See also generally McAdams v. Henley,169 Ark. 97, 273 S.W. 355 (1925) and Bauer, supra, 168 Ark. 220, 270
(holding that the funds of a local improvement district cannot be diverted from their authorized purposes because the property owners in the district have a private interest or vested right to such funds).
The board's decision with respect to funding the SPOA should therefore be made with utmost caution, ideally with the assistance of counsel to whom the board ordinarily looks for advice.
Question 2 — Is the SID limited to the list of items included in the 1978petition, i.e., maintenance of roads, airstrip, boat ramp, and park? Orcan they expand their authority to complete any other projects theychoose, e.g., the installation of additional fire hydrants?
This question requires reference to the petition for the creation of the SID and the final court order approving its creation. The board of commissioners may take all action deemed necessary or useful to carry out the purposes of the SID. A.C.A. §§ 14-92-220 (a) and 14-92-207 (b) (1) (B), supra. The purpose of the SID is stated in the final order, which in this instance approved the purposes set forth in the petition to create the SID. See Final Order Approving the Creation of Skypoint Estates Suburban Improvement District, No. CC-77-6, at 4 (June 16, 1978). According to the Final Order, in addition to surfacing a road these purposes include "the acceptance of one private runway, municipal park, certain nature trails, and one boat launch ramp facility." Id. at 5. The purposes also extend to operating and maintaining these facilities. See Petition To Create A Suburban Improvement District and Property Owners Association, No. CC-77-6, at 1 (Sept. 1, 1977).
In response to your specific question, therefore, it is my opinion that the SID is limited to the improvements and facilities enumerated in the Final Order, and the operation and maintenance of such. They cannot expand their authority or spend their tax/assessment dollars to complete any other projects they choose, unless such projects are useful or necessary to operate and maintain the improvements and facilities outlined in the Order. This necessarily follows from the requirement that suburban improvement districts "shall not cease to exist upon the . . . completion of the improvement but shall continue to exist for the purpose of preserving, maintaining, and operating the improvement. . . ." A.C.A. § 14-92-239 (emphasis added).
Question 3 — Are there any state laws or any other restrictions whichprohibit the SID from meeting with the SPOA informally at our semi-annualmeetings as they always have to answer questions about their projects andhow our tax money is being spent?
It is my opinion that there are no laws or other restrictions that would prevent the SID from meeting with the SPOA at the SPOA's semi-annual meetings, or at other times, as long as the meetings are held in compliance with the FOIA. See generally Op. Att'y Gen. Nos. 2001-023 and 92-312 (opining that meetings of suburban improvement districts are subject to the FOIA).
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh
[1] Under Article 16, sections 11 and 13, of the Arkansas Constitution, monies arising from a tax levied for one purpose cannot be diverted to another and any citizen may institute suit to protect against any such "illegal exactions." It has been held, however, that these constitutional provisions apply to general taxation only, and not to local improvement district assessments. See generally Green v. WulffDrainage Dist. No. 4, 193 Ark. 1087, 1091, 104 S.W.2d 1076 (1937).